# Exhibit A

9/19/2019 12:00 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 36953852
By: Nelson Cuero
Filed: 9/19/2019 12:00 PM

CAUSE NO. 2019-_____

| | | |
|---|---|---|
| KYLE WIGGS | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| AETNA LIFE INSURANCE COMPANY | § | _____ JUDICIAL DISTRICT |

## <u>ORIGINAL PETITION</u>

This is a suit for damages and other relief by Plaintiff Kyle Wiggs against Aetna Life Insurance Company. It is an action for breach of the insurance contract.

### Parties

1.   Plaintiff Kyle Wiggs is a resident citizen of Houston, Harris County, Texas.

2.   Defendant, Aetna Life Insurance Company ("Aetna"), is a domestic or foreign insurance company licensed to do business and doing business throughout the state of Texas, and can be served with process by serving its registered agent, CT Corporation, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136, or wherever it may be found.

### Jurisdiction

3.   This Court has jurisdiction because the amount in controversy exceeds the jurisdictional minimum. Further, it has jurisdiction under Texas Civil Practice and Remedies Code §17.041 and §17.042 because at the time of the occurrence in question, Aetna was a nonresident doing business in the State of Texas and committed to performing a contract in whole or in part in the State of Texas.

### Venue

4.   Venue is proper in Harris County, Texas since all or a substantial part of the events giving rise to the claim occurred in Harris County.

Certified Document Number: 87209752 - Page 2 of 9

**Claims for Relief**

5.  Pursuant to Tex. R. Civ. Proc. 47, Plaintiff seeks monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees. Pleading more specifically, Plaintiff seeks monetary relief of no more than $75,000.00, and a declaratory judgment that his health insurance claim is covered under the Aetna policy.

**Factual Background**

6.  Aetna is in the insurance business, including selling various forms of health insurance. The promise of health insurance is to cover medically necessary expenses if the insured becomes ill and needs medical attention.

7.  Implicit in the promise of the Aetna policy is that it will timely, fairly, and objectively adjust and pay a covered claim. If in doubt about the cause or nature of the insured's condition, Aetna implicitly promises to fairly and objectively investigate the claim and promptly pay if the claim meets the policy requirements.

8.  Kyle Wiggs first fell in love with firefighting in 2008, when he was sent to TEEX at Texas A&M for offshore marine firefighting school. He quickly discovered that he could serve as a volunteer firefighter during his time off from working on oil rigs, and he took advantage of the opportunity. In July 2009, he joined the Spring Fire Department. After a short stint in Montana for work, Mr. Wiggs returned to Houston in 2015 and again volunteered with the Spring Fire Department. He went to night school to get his EMT certification, then went to school full time in 2017 to get his firefighting certifications.

9.     Mr. Wiggs's dream came true on February 12, 2018, when he was hired as a firefighter for the Port of Houston Authority Fire Department. As part of his employment with the Port of Houston Authority, Mr. Wiggs was eligible for a health insurance policy offered by Aetna ("Policy"). The Policy covered treatment for medically necessary health care expenses.

10.    Over the years, Mr. Wiggs noticed unexplained growths in his body. He began to suffer from fatigue, wheezing, and shortness of breath. In September 2017, he underwent an ultrasound that showed multiple growths on both of his testicles. A CT scan showed growths in his lungs. A PET scan confirmed that it was living tissue. After three biopsies, doctors confirmed that Mr. Wiggs had sarcoidosis in his lungs, lymph nodes, and testicles.

11.    Sarcoidosis is a disease characterized by the growth of collections of inflammatory cells (granulomas) in the body, most commonly in the lungs and lymph nodes. While its cause is unknown, experts think it results from the immune system responding to an unknown substance. Research suggests that infectious agents, chemicals, and dust could be responsible for the formation of granulomas in people who are genetically predisposed[1]. As granulomas build up in an organ, its function can become compromised[2].

---

[1] https://www.mayoclinic.org/diseases-conditions/sarcoidosis/symptoms-causes/syc-20350358

[2]   Untreated pulmonary sarcoidosis can lead to permanent scarring of the lungs. Cardiac sarcoidosis can lead to death.

Certified Document Number: 87209752 - Page 3 of 9

Certified Document Number: 87209752 - Page 4 of 9

12.     Mr. Wiggs was sent to a pulmonologist, who tried the conservative approach of waiting on the pulmonary sarcoidosis to disappear. Within 90 days, a new CT showed new growths in the lungs and heart.

13.     The growths in his lungs left Mr. Wiggs constantly out of breath. He would become winded from simple things like vacuuming, drying dishes, or even taking a shower.

14.     He sought appropriate medical treatment to diagnose and treat his condition. In one year, he saw three pulmonologists, two surgeons, one general practitioner, one cardiologist, one urologist, and one rheumatologist. Aetna paid for these medical visits, as well as the associated tests, scans, and emergency room visits.

### Treating Sarcoidosis

15.     The treatment of sarcoidosis often involves drug therapy. Drug treatments are used to relieve symptoms, reduce inflammation, reduce the impact of granuloma development, and prevent the development of lung fibrosis and other irreversible organ damage. Corticosteroids are typically the first drugs prescribed to treat sarcoidosis, as they can be effective in reducing inflammation[3]. They also come with numerous side effects, many of which disabled Mr. Wiggs. For this reason, physicians either lower the dose of steroids or use another drug in combination.

16.     Another medication used to treat sarcoidosis is Infliximab[4] ("Remicade"). This medication is either given as an intravenous injection every 4-8 weeks or under the

---

[3] https://my.clevelandclinic.org/health/articles/11867-sarcoidosis-treatment-options

[4] Remicade is the medication's brand name. Infliximab is the generic drug name.

4

skin every 1-2 weeks. Remicade is used for patients with severe sarcoidosis. It is usually used after other options are not successful or not tolerated[5].

### The Aetna Policy and Guidelines

17. The Policy requires covered treatment to be medically necessary. It defines medical necessity as:

> Health care services that we determine a provider exercising prudent clinical judgment would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that we determine are:
> • In accordance with generally accepted standards of medical practice
> • Clinically appropriate in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease
> • Not primarily for the convenience of the patient, physician, or other health care provider
> • Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

18. Moreover, the Policy does not categorically exclude the use of Remicade. In fact, Aetna created a Clinic Policy Bulletin for Remicade ("Policy Bulletin") explaining when its use should be covered. The Policy Bulletin provides that:

> Aetna considers infliximab (Remicade), infliximab-abda (Renflexis) and inflixmab-dyyb (Inflectra) medically necessary for members with chronic pulmonary sarcoidosis who remain symptomatic despite treatment for three or more months with steroids (ten milligrams (mg) per day or more) and immunosuppressants (such as azathioprine, cyclophosphamide, or methotrexate). A next step consideration by your physician would probably be the addition of an immunosuppressant before considering Remicade.

---

[5] https://my.clevelandclinic.org/health/articles/11867-sarcoidosis-treatment-options

5

Certified Document Number: 87209752 - Page 5 of 9

19.     In other words, Aetna promises to cover treatment for Remicade if 1) the member has chronic pulmonary sarcoidosis, 2) is symptomatic for more than 3 months, 3) despite treatment with steroids and immunosuppressants.

20.     Mr. Wiggs suffered from chronic pulmonary sarcoidosis. His medical provider, Dr. Suong Tran, prescribed steroids and immunosuppressant medication for more than 3 months. However, the sarcoidosis did not disappear. More treatment was needed to address Mr. Wiggs's severe sarcoidosis.

### Aetna Denies the Claim and Appeals

21.     One September 7, 2018, Dr. Tran submitted a request for precertification to use Remicade to treat his sarcoidosis. Aetna denied the request.

22.     On September 13, 2018, Mr. Wiggs called Aetna Member Services to find out why his coverage was denied. The Aetna representative explained that the call was being recorded. She then explained to Mr. Wiggs that the claim was approved for the period September 2018 through March 2019.

23.     After Mr. Wiggs informed Dr. Tran that Aetna approved treatment for Remicade, he was advised that Aetna denied the claim because its medical record reviewer decided that Remicade was not medically necessary.

24.     Dr. Tran tried to contact Aetna's medical record review to find out why coverage was denied. Aetna's medical record reviewer refused to conduct a peer to peer phone call with Dr. Tran.

25.     Mr. Wiggs submitted an appeal on October 1, 2018. Aetna denied it a week later.

26.     In denying Mr. Wiggs's appeal, Aetna claimed that treatment with Remicade was not medically necessary and did he did not meet the Policy Bulletin criteria. Aetna

Certified Document Number: 87209752 - Page 6 of 9

also advised that Mr. Wiggs could submit a request for a specialty appeal by a medical professional who specialized in the appropriate area of medicine.

27. Dr. Tran submitted the request for a specialty appeal in October 2018. On October 28, 2018, Aetna denied that request, stating that appeals had been exhausted.

28. Dr. Tran again requested a specialty appeal in January 2019. On February 6, 2019, Aetna denied that request, stating that appeals had been exhausted.

29. Mr. Wiggs tried to find out the identity of Aetna's medical record reviewer who denied his claim, as well as his credentials. Aetna refused to provide any credentials, stating only that his name was Dr. David Nelson. It did not advise where Dr. Nelson was based, where he was licensed to practice medicine, or even his area of specialty.

30. Having exhausted his administrative remedies, Kyle Wiggs brings this action to recover the benefits promised in the Policy.

## Breach of the Insurance Contract

31. Plaintiff incorporates the preceding factual allegations.

32. Mr. Wiggs enrolled in the Port of Houston Authority's employee benefit plan and obtained a health insurance policy issued by Aetna. The policy's effective date was January 1, 2018. Mr. Wiggs provided Aetna with the information and evidence needed to approve his health insurance claim. However, Aetna breached its duty under the insurance policy by failing and refusing to pay for his covered treatment. It further breached its obligations under the Policy by failing to conduct a full and fair appeal. As of September 2019, he has personally paid $33,768 out of his own

Certified Document Number: 87209752 - Page 7 of 9

pocket in order to receive Remicade treatments, for which he now sues for reimbursement.

## Right to Declaratory Relief

33.    There is a real and substantial justiciable controversy between Kyle Wiggs and Aetna that requires judicial declaration by this Court of the parties' rights and duties. Dr. Tran has advised Mr. Wiggs that he will need additional Remicade treatments in the future. Aetna has categorically denied coverage for Remicade.

34.    Pursuant to Texas Civil Practice and Remedies Code §37.001, *et. seq.*, Mr. Wiggs requests a judicial determination declaring that he meets Aetna's definition of medical necessity under the Policy and that his Remicade treatment is covered and will be covered under the Policy.

## Request for Attorneys' Fees

35.    This suit was made necessary by the wrongful acts and practices of Aetna. Mr. Wiggs has been forced to retain an attorney to prosecute his claims, for which he has agreed to pay a reasonable attorneys' fee. In this regard, he is entitled to recover his reasonable attorneys' fees and expenses incurred and to be incurred in this action for the full prosecution of this claim through trial and appeal, if any, that are reasonable and necessary for him to obtain the relief he seeks. Accordingly, Mr. Wiggs further seeks recovery of his reasonable attorneys' fees pursuant to Section 37.009 *et. seq.* of the Texas Civil Practice and Remedies Code, Section 38.001, *et. seq.* of the Texas Civil Practice and Remedies Code, or any of them.

## General Claims

8

36.   All notices required to be given have been given, and all conditions precedent have been satisfied.

37.   Plaintiff requests prejudgment interest at the maximum rate permitted by law, including that permitted pursuant to Tex. Ins. Code §542.060 and §1103.104(c), or the maximum rate permitted in equity.

## Request for Disclosure

38.   Plaintiff requests that Aetna disclose, within 50 days of service of this request, the information and material described in Rule 194.2(a)-(l) of the Texas Rules of Civil Procedure. Copies of documents and other tangible items responsive to this request must be served on Plaintiff with Aetna's response. Tex. R. Civ. P. 194.4.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff Kyle Wiggs prays that he have a full trial on the merits of his claim, that he have and recover his actual damages, together with any and all of his attorney's fees, costs, expenses, and interest to which he may be justly entitled, and for general relief to which he may be entitled at law or in equity.

Respectfully submitted,

By: ___/s/ Amar Raval_____

Amar Raval, TBA #24046682
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, Texas 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF

9

Certified Document Number: 87209752 - Page 9 of 9



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   October 24, 2019


Certified Document Number:        87209752 Total Pages:  9


Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS


**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# Exhibit B

Exhibit C

# Exhibit D

# Exhibit E